DECISION
Theodore Leftwich, Sr., appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. The court terminated appellant's parental rights and granted custody of his children Kimiya Leftwich, Theodore Leftwich, Jr., and China Leftwich, to Franklin County Children Services ("FCCS"). We affirm.
On July 18, 1995, Kim Leftwich, appellant's wife and mother of the three children, fired a gun in the family home during a domestic dispute with appellant. At that time, the children were residing with appellant and his wife. Because of the incident, FCCS began working with the family while allowing the children to stay in the home. On November 22, 1995, the Columbus Police Department again responded to a call regarding a domestic dispute between appellant and his wife. Upon arriving at the home, police found appellant and his wife outside of the home. Inside the home, police found the three children and a loaded gun that was accessible to the children.
The children were removed from the home and appellant was arrested for child endangering. FCCS determined that it was not possible to return the children to the parents within thirty days due to frequent domestic violence incidents between appellant and his wife and her severe substance abuse problem. On December 20, 1995, FCCS filed a dependency complaint with the Franklin County Court of Common Pleas, Juvenile Division, claiming that the children needed to be placed outside of the home. On April 26, 1996, the juvenile court found the three children to be dependent minors and placed them in the temporary custody of FCCS. We affirmed the juvenile court's decision in In re Leftwich (Apr. 22, 1997), Franklin App. No. 96APF09-1263, unreported.
While the children were in the temporary custody of FCCS, numerous case plans were developed for appellant, his wife, and the children. The main objectives of the case plans involved solving the problems of domestic violence and substance abuse within the home. In 1997, the children were returned briefly to their parents. However, they were again taken out of the home after just a few months because FCCS learned of more domestic violence incidents occurring within the home while the children were at home.
On August 26, 1998, FCCS filed a motion for award of permanent custody of the children for the purpose of having the children adopted. The matter was referred to a magistrate who held hearings in April and May 1999. On June 2, 1999, the magistrate held that FCCS should be granted permanent custody of the children. Appellant filed objections to the magistrate's decision with the trial court. The court overruled appellant's objections and adopted the magistrate's decision as an order of the court. Appellant appeals this decision and presents the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE MAGISTRATE'S [DECISION] THAT THE FATHER TED LEFTWICH WAS UNSUITABLE FOR PLACEMENT OF HIS THREE CHILDREN IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS IN DIRECT CONFLICT WITH THE UNCONTRADICTED TESTIMONY OF DR. JOHN MASON.
 II. THE TRIAL COURT'S DECISION AND THE ENTIRE PROCEEDING VIOLATES THE FATHER['S] RIGHT OF DUE PROCESS IN THAT HIS CHILDREN ARE BEING TAKEN FROM HIM WITHOUT THE FATHER BEING CONSIDERED AS THE PRIMARY OR SOLE CARE GIVER TO HIS THREE BIOLOGICAL CHILDREN.
Appellant argues in his first assignment of error that the trial court's findings under R.C. 2151.414(E) were not supported by clear and convincing evidence. Appellant also claims that the court's findings were against the manifest weight of the evidence. We disagree.
If a child is adjudicated a dependent child, the court may make the following order of disposition:
 Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with [R.C. 2151.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with [R.C. 2151.414(D)] that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4).
R.C. 2151.414(E) requires the court, in determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, to also find that one of the factors of R.C.2151.414(E)(1) through (12) exists. A trial court commits reversible error in granting permanent custody without finding by clear and convincing evidence that one or more of the twelve enumerated factors in R.C. 2151.414(E) exists. In re William S.
(1996), 75 Ohio St.3d 95, syllabus.[1] R.C. 2151.414(E)(1) states:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
In the present case, the magistrate found that pursuant to R.C. 2151.414(E)(1), "[t]he parents have failed continuously and repeatedly to remedy the conditions causing the placement. The parents have failed to utilize services that were made available to correct the problems that caused removal." An appellate court will uphold a trial court's granting of a motion for permanent custody if within the record, "there is some competent, credible evidence, which is clear and convincing, going to all the essential elements in a determination that [the agency] made reasonable, though unsuccessful, efforts to make it possible for the child to return home." In re Steinhoff (Dec. 22, 1997), Butler App. No. CA96-12-265, unreported, following C.E. Morris v.Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact because the "trier of fact has the benefit if seeing and hearing the witnesses testify and is in the best position to determine the facts of the case." State v. McCoy (June 22, 2000), Franklin App. No. 99AP-969, unreported, following In re Good (1997), 118 Ohio App.3d 371,377.
A review of the record shows that competent, credible evidence supports the court's finding that appellant continuously failed to remedy the conditions that caused the children to be removed from the home. Appellant failed to follow the case plans developed by FCCS. Appellant continued to live with his wife in violation of a court order and an FCCS case plan. Appellant continued to have problems with domestic violence as he and his wife continued to have many conflicts between them. For example, on November 4, 1998, appellant set fire to his wife's clothes after an argument. Appellant's visitation record with his children was described by the children's Guardian ad litem as "inconsistent." Additionally, appellant, at the hearing before the magistrate, was unwilling to even acknowledge that his actions created an adverse home environment necessitating removal of the children. Appellant also did not admit that he made a mistake leaving a loaded gun within reach of the children. Appellant continued to assert that the domestic violence between he and his wife was never a problem and denied any knowledge of his wife's drug problem. He further believed that he did not have any problems with anger management. The magistrate concluded that, based upon the evidence, appellant "is a dangerous individual."
Appellant also argues in his first assignment of error that the testimony of his witness, psychologist Dr. John Mason, was uncontradicted and the magistrate did not give proper weight to his testimony. At trial, Dr. Mason testified that appellant was psychologically capable of being a good parent. Dr. Mason also found that appellant could properly parent the children by himself with the assistance of therapy, parenting classes and anger management programming.
However, a review of Dr. Mason's testimony also shows that he thought together, appellant and his wife were incapable of properly parenting the children due in large part to the drug usage of appellant's wife and appellant's anger and frustration with his wife's behavior. Dr. Mason's testimony was also based on incomplete and inconsistent testimony given to him by appellant. Appellant did not reveal certain key facts about his life to Dr. Mason during his evaluation. For example, Dr. Mason testified that appellant had successfully raised his twenty-year-old son, Quwante Leftwich, by a previous marriage. However, Dr. Mason was not aware of the fact that Quwante only lived with appellant from about the age of five to age nine and that for the majority of Quwante's childhood and adolescence his grandmother raised him.
Even if Dr. Mason's testimony was uncontradicted as appellant contends, the magistrate found that the doctor's recommendations were no different than the recommendations set forth in the previous case plans developed for appellant and his wife. Appellant was unwilling to follow the same counseling programs and classes for almost four years.
Accordingly, after having reviewed the complete record, we find that sufficient credible evidence was presented to show by clear and convincing evidence that FCCS's motion for permanent custody was properly granted by the trial court. Appellant's first assignment of error is overruled.
Appellant contends in his second assignment of error that the entire proceeding of the trial court violated his due process rights because he was never considered as the primary or sole caregiver of his three children. We disagree.
It "is well recognized that the right to raise a child is an `essential' and `basic' civil right [and the] parents `must be afforded every procedural and substantive protection the law allows.'" In re Hays (1997), 79 Ohio St.3d 46, 48, quotingStanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,1212, and In re Smith, supra. It has also been deemed "cardinal" that the custody, care and nurture of the child reside first in the parents. In re Murray (1990), 52 Ohio St.3d 155, 157; In reCoffey (Jan. 26, 1998), Madison App. No. CA97-05-021, unreported. "However, a parent's interest in the care, custody, and management of his or her child is secondary to that of the best interest of the child." Id. Since permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case," parents must be afforded every procedural and substantive protection the law allows. In reHayes, supra, quoting In re Smith, supra.
A review of the record shows that appellant was independently considered as a parent. Additionally, it was proper for the court to consider appellant and his wife together based upon the fact that they lived together. Although appellant's wife left for days at a time, appellant admitted that she spent at least three to four nights per week in the home. While considering appellant's ability to parent, the court also found that appellant continuously failed to remedy the conditions that caused the children to be removed from the home. See R.C.2151.414(E)(1).
Appellant also claims that the case plans were flawed because no matter what he did, they would still fail because his wife would not seek help and rehabilitation for her drug addiction. However, a review of the record shows that appellant himself did not do his part in trying to fulfill his duties as outlined in the case plans. He did not complete any of the recommended domestic violence programs, anger management classes, or parenting classes. In fact, appellant still does not accept any personal responsibility and, instead, blames his wife for all of his problems.
Accordingly, after having reviewed the record, we find that appellant's due process rights were not violated. Appellant's second assignment of error is overruled.
Appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
BOWMAN, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] R.C. 2151.414(E) contained eight factors under In re WilliamS. Effective September 1996, R.C. 2151.414(E) was later expanded to include twelve factors and then effective March 18, 1999, it was expanded to include sixteen factors. Since FCCS's motion for permanent custody was filed prior to March 18, 1999, we will apply the version of R.C. 2151.414(E) that contained twelve factors.