OPINION
Mother appellant Iris Rogers ("Rogers") brings these appeals from the judgment of the Marion County Court of Common Pleas, Juvenile Division, granting permanent custody of Keyontay Rogers (D.O.B. 8/24/1995) and Darren Daniels (D.O.B. 8/27/1992) ("the children") to Marion County Children Services ("MCCS").)
On November 17, 1997, Rogers was committed to a halfway house for a probation violation. She placed her minor children in the custody of her mother. On December 15, 1997, the children were removed from the care of their grandmother for failure to properly administer medication to Darren. The children were released to the custody of a friend of the family. On May 22, 1998, the trial court entered a finding of dependency and placed the children in the care of Karen Douglas ("Douglas"), an aunt. Custody of the children was changed to Corey Rogers, Rogers' brother, on September 3, 1998. On January 8, 1999, custody was returned to Douglas.
On June 8, 1999, temporary custody of the children was granted to MCCS and they were placed in foster care. MCCS filed for permanent custody on November 9, 1999. A hearing was held on this motion on October 23, 2000. On December 26, 2000, the trial court granted permanent custody to MCCS. It is from this judgment that Rogers appeals.
Rogers raises the following assignment of error:
 The trial court erred in granting permanent custody to MCCS when it failed to establish, by clear and convincing evidence, that the mother's use of alcohol was so severe as to render her unable to provide an adequate permanent home for her children.
Rogers argues in the first assignment of error that the trial court erred in granting permanent custody of the children to MCC S.R.C. 2151.414
provides in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
* * *
 (D) In determining the best interest of a child at a hearing * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 (E) In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *.
 A reviewing court may not reverse a custody determination unless the trial court has abused its discretion. Pater v. Pater (1992), 63 Ohio St.3d 393, 588 N.E.2d 794. "It is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, 682. This right should not be denied without very strong evidence that it is necessary. The trial court must have clear and convincing evidence that it is in the children's best interests to have the parental rights terminated.
In this case, the basis for the trial court's decision to grant permanent custody to MCCS was Rogers' alcohol use. The testimony at the hearing established that Rogers was sent to Alvis House for treatment of her alcohol use and was in residence there when MCCS first became involved in the children's lives.[1] Rogers successfully completed the program at Alvis House. In the years since her release from Alvis House, Rogers has failed to attend AA meetings or counseling with any consistency. Rogers admitted to continuing to drink every now and then. Rogers also admitted to having a "relapse" in June 2000 and she was arrested for disorderly conduct while intoxicated at that time. The substance abuse counselors testified that Rogers had a severe problem with alcohol that would require time to treat. One counselor suggested that the appropriate treatment would be a short inpatient detoxification followed by residence at a halfway house to provide Rogers with the support necessary to overcome alcoholism.
The caseworkers testified that in the two plus years they had been involved in the case, Rogers had successfully completed the parenting courses and obtained a suitable home. The caseworkers also testified that Rogers has an excellent relationship with her children and is an effective parent. She knows how to calm and comfort her children and there is no concern about her parenting skills. Although Rogers did not make all of her scheduled visitations, she had consistently visited the children and they were always very happy to see her.[2] All of the random drug and alcohol tests given to Rogers came back negative. The evidence was that she had been sober at all of the visits except for one suspected incident when a caseworker believed that she smelled alcohol on Rogers' breath. At that visit, Rogers denied drinking and agreed to submit to an alcohol test, but the lab was closed when the caseworker drove Rogers there. The substance abuse counselors testified that if Rogers could achieve a level of sobriety, she would be a good mother. Rogers testified that she was once again attending counseling and AA meetings. She also testified that she was willing to undergo inpatient treatment if the court ordered it.
No one testified that while attempting to become sober, Rogers could not resume the parenting of her children within the next year. Additionally, no testimony was given that Rogers' use of alcohol interfered with her ability to parent or had an impact upon the children. MCCS argues that the alcohol use does have an impact because it was alcohol use that caused Rogers to leave her children in the care of her mother while she went to Alvis House. The grandmother did not properly care for the children. Thus, MCCS concluded that Rogers' alcohol use caused her to make a poor decision. However, there is no evidence that Rogers' use of alcohol has ever had a direct negative effect on the children. Prior to the court finding the children dependent while in the grandmother's care, MCCS had received no complaints about the care of the children in Rogers' care. There is no evidence that the children were not properly supervised or nurtured. There is no evidence that the children were ever neglected or abused while with Rogers. In short, there is no evidence that Rogers, upon receiving appropriate treatment, cannot properly parent her children within the next year.
While living with a parent with an alcohol problem may not be the ideal situation for the children, the evidence shows here that the children know their mother and have a strong bond with her. Rogers has complied with most aspects of the case plan by attending parenting classes and finding a clean, adequate home with appropriate food. She has also continued to visit her children. Although she has not attended the children's counseling sessions, this cannot be held against her since the testimony indicated that she was not notified of when they would occur.
Given the testimony presented and the testimony not presented, the evidence does not support the trial court's decision that Rogers' alcohol abuse is so severe that she could not, with appropriate treatment, provide a home for the children within a year. Without clear and convincing evidence to support the trial court's judgment, the decision is an abuse of discretion. The assignment of error is sustained.
The judgments of the Marion County Court of Common Pleas, Juvenile Division, are reversed and the cause remanded for further proceedings in accord with this judgment.
 ______________ Bryant, J.
SHAW and HADLEY, JJ., concur.
[1] Rogers was sent to Alvis House for violation of her probation, which stated that she could not use any alcohol.
[2] Rogers testified that the failure to attend all scheduled visits was the result of lack of transportation. Rogers never obtained a driver's license and had to rely on friends and family to get her to MCCS for the visits. If she was late, the visits were cancelled. Rogers also testified that she was in the process of obtaining a driver's license.