OPINION
{¶ 1} These consolidated appeals are from the November 27, 2002 judgments of the Crawford County Court of Common Pleas, Juvenile Division, granting permanent custody of Allen, Samantha, and Lynn Kuhn to the Crawford County Children Services Board ("CSB") and terminating all parental rights of their parents, Linda and Jeffery Kuhn ("the parents").
 {¶ 2} Allen, Samantha, and Lynn were removed from their parents' custody on January 22, 2002, and placed in the custody of CSB. The removal came as a result of facts discovered during an investigation conducted by CSB into allegations of sexual abuse involving one of the minor children. The basis of the removal was the deplorable and unsanitary home conditions discovered by CSB when they arrived at the parents' home. This was the third removal of the Kuhn children from the home for the same, or substantially similar, presenting problem.
 {¶ 3} A hearing on the original neglect complaint was scheduled for adjudication on February 12, 2002, but was continued until March 4, 2002, at the parents' request. On March 4, the allegations of the complaint were amended to dependency to which the parents admitted. The children were adjudged to be dependent and CSB was granted temporary custody at that time. Following the adjudication, a case plan was presented, discussed, and approved with the goal of the reunifying the children with their parents. The case plan, which was signed by parents, presented, among other things, the goal of maintaining a clean, uncluttered, and sanitary home environment.
 {¶ 4} A Semi-Annual Administrative Review was conducted by CSB on July 16, 2002, approximately six months after the children were removed from the home. CSB found the same substandard conditions with little appreciable improvement that existed when the children were removed from the home. In an effort to rectify the problem, CSB provided homemaker services to the parents as it had done twice before when the children had been removed from the home. The CSB homemaker was to teach the parents proper housekeeping, budgeting, and personal hygiene, the same tasks assigned to the homemaker in previous involvements with the parents. On this occasion, the homemaker approached the problem differently and engaged in a "spring cleaning" alongside Mrs. Kuhn until a satisfactory result was obtained.
 {¶ 5} On July 31, 2002, the guardian ad litem, given the parents' failure to rectify the conditions of their home over the six month period between the children's removal from the home and the semi-annual administrative review, filed a motion for permanent custody. A hearing was conducted by the trial court on September 20, 2002. At this time, both the state, on behalf of CSB, and the parents presented witnesses. The court found the motion well taken and granted permanent custody of the three children to CSB on November 27, 2002. These appeals followed, and the parents now assert one assignment of error for our review.
ASSIGNMENT OF ERROR
 The court's grant of permanent custody of the Kuhn children to the Crawford County Children Services Board was against the manifest weight of the evidence.
 {¶ 6} We begin our review of this matter by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'"[1] Therefore, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person.[2] Because parents have a fundamental liberty interest in the custody of their own children, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'"[3] In consideration of these principles, the Ohio Supreme Court has determined that parents "must be afforded every procedural and substantive protection the law allows."[4] Thus, within these constructs, we examine the proceedings in the trial court.
 {¶ 7} In deciding whether to grant permanent custody of a child to a party who has so moved, R.C. 2151.414(B)(2) requires a court to grant permanent custody of a child to the moving party "if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" and determines that permanent custody is in the best interest of the child.
 {¶ 8} The court must determine by clear and convincing evidence that one or more of the sixteen factors listed in R.C. 2151.414(E) exist in order to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.[5]
Additionally, the court must determine that permanent custody is in the best interest of the child by considering all relevant factors, including, but not limited to, the five factors listed in R.C. 2151.414(D).
 {¶ 9} In the present case, the trial court found "by clear and convincing evidence that the child[ren] should not be placed with the parents because they have continuously failed to substantially remedy the conditions causing the child[ren] to be placed outside the home and have demonstrated a lack of commitment toward the child[ren][.]" These reasons are enumerated factors in R.C. 2151.414(E)(1) and (4) respectively. Thus, we must scrutinize the record to determine whether there was clear and convincing evidence to support the trial court's finding.
 {¶ 10} The undisputed record reveals that the deplorable condition of the parents' home had persisted on and off over the course of CSB's eight year involvement with the children. The most recent removal of the children from the home was the third such occasion for the same unsanitary home conditions. Additionally, testimony indicates that the parents were not only unwilling to meet basic home cleanliness standards, but they were also unable to meet personal hygiene standards established by the court for themselves and their children.
 {¶ 11} The CSB homemaker testified that when she arrived at the home on July 19, 2002, six months after the children were removed from the home, she found the home unclean and cluttered with a prevalent odor. She also noted the prevalence of dog and cat hair in the home and that the kitchen table and counters were covered with dirty dishes and knickknacks. The homemaker described the home's cleanliness as "very poor."
 {¶ 12} On two prior occasions, the homemaker stated that she had been referred to the parents' residence for homemaker services and to work with the parents and their children on lice control and personal hygiene. The homemaker found the same conditions with respect to the parents' personal hygiene and home cleanliness on previous visits to the home as she did during the June 19th visit. This time, she chose to take a different approach and, rather than write out a cleaning schedule, engaged in a side-by-side "basic spring cleaning" with Mrs. Kuhn. This different approach, according to the homemaker, resulted in a one hundred percent better result. During the house cleaning, Mr. Kuhn offered no assistance with the exception of throwing away some junk mail and other papers he had collected.
 {¶ 13} On the issue of personal hygiene, numerous witnesses, including the homemaker, described the parents and the children as routinely unwashed, with dirty clothes, a body odor and an overall unacceptable appearance. This problem has persisted over the course of CSB's eight year involvement with the family and has continued despite CSB's assistance. When the children were removed from the home on January 22, 2002, all three were infested with head lice. While in temporary custody, the children's lice infestation was rectified; however, during a subsequent home visit, the children were re-infested with lice.
 {¶ 14} Based upon this evidence, the trial court did not err in finding that there was clear and convincing evidence that the children should not be placed with their parents. As indicated, the parents continuously failed to substantially remedy the conditions causing the children to be placed outside the home and, therefore, demonstrated a lack of commitment towards the children.
 {¶ 15} Next, the trial court had to consider whether permanent custody was in the best interest of the children. R.C. 2151.414(D) requires the court to consider all relevant factors, including the five factors listed in this section, in determining the best interest of a child. These factors include the relationship and interaction between the child and his or her parents, siblings, and others; the wishes of the child; the custodial history of the child; and the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"[6]
 {¶ 16} The evidence demonstrated that the children were comfortable when visiting with their parents and that the parents loved their children. However, the record also shows that this was the third such incident in which the children were placed in CSB's temporary custody based upon the condition of the home and the personal hygiene of the parents and the children. In the CSB's eight year involvement with appellants, all reasonable efforts were made to help the parents resolve these primary problems. However, appellants did not demonstrate their commitment to making the recommended changes on a consistent and effective basis, as set forth in the case plan. Furthermore, as the trial court noted, "there is no indication that this situation is likely to improve in the future."
 {¶ 17} The guardian ad litem's brief expresses the opinion that it is in the children's best interest that they be placed in the permanent custody of CSB. In addition, two CSB caseworkers testified as to their opinion that the children were adoptable. Given the evidence before the court, we do not find that the trial court erred in determining that permanent custody to CSB was in the children's best interest.
 {¶ 18} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW and WALTERS, JJ., concur.
[1] In re Hayes (1997), 79 Ohio St.3d 46, 48.
[2] Id.
[3] In re Murray (1990), 52 Ohio St.3d 155, 157.
[4] In re Hayes, supra.
[5] R.C. 2151.414(E).
[6] R.C. 2151.414(D)(1) through (4).