OPINION
{¶ 1} This appeal is taken from a final judgment of the Juvenile Division of the Portage County Court of Common Pleas. Appellant, Amie Slocum ("appellant"), appeals from the trial court's judgment terminating her parental rights and granting permanent custody of her minor daughter, Meredith Cornell ("Meredith"), to appellee, Portage County Department of Job and Family Services ("PCDJFS").
 {¶ 2} Appellant is the mother of three children, one of which is the subject of the current appeal: Meredith, born May 4, 2001. Meredith lived with appellant from the time of her birth through January 31, 2002.
 {¶ 3} On or about January 10, 2002, appellant's son ("Dakota") was removed by PCDJFS for reasons unrelated to the current case. Some three weeks subsequent to Dakota's removal, appellant contacted Jan Jacobs, a social worker with PCDJFS and requested Jacobs to take custody of her two remaining daughters, Abigail and Meredith. According to the record, appellant was overwhelmed with emotion after Dakota's removal and believed herself ill equipped to care for the two children.
 {¶ 4} Acting on appellant's request, PCDJFS removed Meredith on January 31, 2002. After Meredith's removal, appellant was given a case plan to assist her in reuniting with her children. The case plan required appellant, "to provide Meredith [with] a safe environment and * * * maintain her own mental health to enable her to do so." In order to accomplish these goals, the case plan advised appellant to, "continue counseling through Coleman Professional Services (CPS) * * * [and] follow her therapist's recommendations." Moreover, appellant's case plan provided that, "[p]rogress will be measured through [appellant's] ability to maintain her CPS appointments and follow through on recommendations and through her ability to meet Meredith's needs on an ongoing basis and maintain her home in a safe, secure manner." In addition to these goals, appellant was required to pay child support to PCDJFS. PCDJFS provided appellant with appropriate connections to accomplish her case plan goals. Although appellant expressed (and continues to express) an interest in complying with her case plan, she only "sporadically" attended her counseling appointments and has yet to complete any of her treatments.
 {¶ 5} Despite her casual attitude towards her case plan, appellant maintained a regular visitation schedule with Meredith while living in Ohio: between January 31, 2002 and August 17, 2002 appellant made 27 visits. However, on August 17, 2002, appellant moved to Michigan. As of March 28, 2003, the date of the hearing, appellant had visited Meredith only once, on December 13, 2002. The record reflects that appellant has made no other affirmative attempt to contact Meredith since her move to Michigan.
 {¶ 6} Since appellant's move, Jacobs has spoken with appellant on four separate occasions. Jacobs testified at the hearing that two of these communications were oriented around appellant's case plans. During their last conversation, appellant told Jacobs that she had an "intake" appointment with a mental health clinic to facilitate compliance with the case plan. However, Jacobs testified that appellant has not provided any objective proof of this (or any other) appointment. According to Jacobs, appellant has neither completed nor achieved any of the goals under the case plan and appellant has not done anything to help stabilize herself. Moreover, at the hearing, Jacobs concluded that appellant's lack of visitation, communication, or support payments demonstrate appellant's complete lack of commitment toward her child.
 {¶ 7} The instant appeal emanates from a complaint filed by PCDJFS alleging that Meredith was a dependent child. As a result, PCDJFS was granted protective supervision of Meredith. On December 4, 2002, PCDJFS filed a motion for permanent custody. The hearing on this motion was conducted on March 28, 2003. Appellant did not attend, but was represented by counsel. At the time of the hearing, Meredith was in the temporary custody of PCDJFS.[1] On April 9, 2003, the trial court granted PCDJFS's motion and placed Meredith in its permanent custody. The current appeal emanates from this decision.
 {¶ 8} Appellant alleges, in her sole assignment of error, that the trial court erred in granting PCDJFS' motion for permanent custody because the court's findings are not supported by clear and convincing evidence.
 {¶ 9} Since permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case, parents must be afforded every procedural and substantive protection the law allows. In re Hayes (1997), 79 Ohio St.3d 46, 48. An action to terminate parental rights in cases of abuse, neglect, or dependency must balance the liberty interests of the parents against the rights of the children to be free from harm from their parents. SeeLassiter v. Dept. of Soc. Serv., (1981), 452 U.S. 18, 27. "The fundamental liberty interest of natural parents in the care, custody, and management of their child[ren] does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the [s]tate." Santosky v. Kramer (1982), 455 U.S. 745, 753. Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children. See, In reCunningham (1979), 59 Ohio St.2d 100, 105.
 {¶ 10} R.C. 2151.414 sets forth a two prong test that a juvenile court must follow when ruling on a motion for permanent custody. R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child, and any of the following apply: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services, agencies, or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned; (3) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. See In re Smith, 11th Dist. No. 2002-A-0098, 8002003 Ohio, at ¶ 8.
 {¶ 11} If the juvenile court determines that one of the four circumstances in R.C. 2151.414(B)(1)(a) through (d) is present, then the court continues with an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires that the trial court consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factor in R.C. 2151.414(E)(7) to (11) are applicable. Smith, supra, at ¶ 10. See, also, In Re: Litz (Nov. 9, 2001), 11th Dist. No. 2001-G-2367, 2001 WL 1402653, at 4.
 {¶ 12} The trial court may terminate the rights of a natural parent and grant custody of the child to the moving party only if it finds by clear and convincing evidence that both prongs of the above test are met. Clear and convincing evidence is more than a mere preponderance of evidence. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985), 18 Ohio St.3d 361, 368. An appellate court will not reverse a trial court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. Litz, supra.
 {¶ 13} In the current matter, a review of the April 15, 2003, Nunc Pro Tunc Journal Entry demonstrates that the trial court fully complied with R.C. 2151.414(B). Although only required to find one of the four listed circumstances, the court found three. Specifically, the court found, by clear and convincing evidence: that Meredith was abandoned by both her father and mother; that Meredith cannot be placed with either parent within a reasonable period of time and should not be placed with either parent; and that Meredith had been in the temporary custody of the PCDJFS for a period of 12 or more months of a consecutive 22 month period on or after March 18, 1999.
 {¶ 14} Although appellant asserts that the court's first two findings are not supported by clear and convincing evidence, she fails to support her claims with any argumentation. Without an argument to evaluate, appellant's conclusion regarding the failure of proof is invalid. In any event, appellant concedes that the court's third finding is unassailable, i.e. appellant notes that she cannot dispute that Meredith was in the custody of PCDJFS for a period of 12 months within a consecutive 22 month period. Thus, the trial court made appropriate findings under R.C. 2151.414(B).
 {¶ 15} We must now address the second prong of the statutory analysis, i.e., whether the trial court appropriately determined that it was in Meredith's best interests to grant permanent custody to PCDJFS. We have previously held that the provisions of R.C. 2151.414(D) are mandatory and must be scrupulously observed. In re Hommes, (Dec. 6, 1996), 11th Dist No. 96-A-0017, 1996 Ohio App. LEXIS 5515, at 4. In so observing, the court made the following findings pursuant to R.C.2151.414(D):
 {¶ 16} The trial court first found: "From January 31, 2002, the date of removal of Meredith from her home through August of 2002, Amie Slocum visited regularly with her daughter. From August 2002 through March 28, 2003, Ms. Slocum has visited with her daughter on one (1) occasion in December of 2002. The Court finds that the child, Meredith Cornell, has regular visitations with her siblings Dakota Slocum and Abigail Slocum. The Court finds that Meredith Cornell is bonded with her foster caregivers and with her siblings." This finding corresponds to the statutory analysis set forth in R.C. 2151.414(D)(1).
 {¶ 17} Testimony from Jan Jacobs established that appellant could visit Meredith up to twice a week. According to Jacobs, between January 31, 2002 and August 14, 2002, appellant visited Meredith "regularly." Appellant moved to Michigan on or about August 14, 2002. Between August 14, 2002 and March 28, 2003 (the date of the permanent custody hearing) some 225 days elapsed during which appellant only visited Meredith once. Moreover, Jacobs testified that Meredith has bonded very well with her foster parents: "They're very close. She calls them Mommy and Daddy. She is obviously very comfortable there, * * *." Further, Jacobs indicated that the foster parents make arrangements for Meredith to visit her other two siblings.
 {¶ 18} Next, the court found "that the wishes of the child cannot be directly expressed by the child because she is too young; D.O.B. 5/04/01. However, the Guardian Ad litem has recommended that Meredith be placed in the Permanent Custody of the [PCDJFS] for purposes of adoption." This finding corresponds to the analysis required by R.C. 2151.414(D)(2). The record supports and appellant does not dispute the veracity of this determination.
 {¶ 19} The court further determined "that Meredith Cornell was in the legal Custody of her mother, Amie Slocum, from the date of her birth, May 4, 2001 through January 31, 2002 when Ms. Slocum requested the [PCDJFS] to take custody of her daughter. Since February 21, 2002, Meredith has been in the Temporary Custody of the [PCDJFS] to the date of this Hearing, March 28, 2003. The Court finds that this child has been in the Temporary Custody of the [PCDJFS] for a period of time of 12 or more months of a consecutive 22 month period on or after March 18, 1999." This finding corresponds to the statutory guidelines set forth in R.C.2151.414(D)(3).
 {¶ 20} The record supports, and appellant does not dispute the court's findings. In effect, appellant responds by arguing that when she did visit, prior to her move to Michigan, her interactions were "very appropriate." Moreover, appellant explains that her failure to make more than one visit during the 225 days subsequent to her move was a product of financial hardship. Although such reasons may explain appellant's lack of visitation, they do not excuse it. Moreover, appellant's rationalizations neither explain nor justify here wholesale failure to maintain contact or communication with Meredith. In sum, the record and evidence support the court's findings.
 {¶ 21} Next, the court found "that the child, Meredith Cornell, has a need for a legally secure permanent placement. The court finds that the placement cannot be achieved without granting Permanent Custody to the [PCDJFS]. No maternal relatives are willing or able to assume responsibility for the care of Meredith. No paternal relatives have come forward requesting the opportunity to care for Meredith." This finding corresponds to R.C. 2151.414(D)(4).
 {¶ 22} Testimony established that neither Meredith's maternal nor paternal relatives are available or able to assume responsibility for her care. Moreover, the record demonstrates that appellant is not dedicated to a reunification with Meredith. Specifically, her lack of commitment regarding visitation and contact with Meredith, in conjunction with her failure to comply with her case plan, illustrate that reunification with Meredith is not appellant's top priority. Therefore the court appropriately found that Meredith is in need of a legally secure permanent placement which cannot be achieved without granting permanent custody to the PCDJFS.
 {¶ 23} Further, Dan Seachrist, a psychologist at Coleman Professional Services, evaluated appellant's mental health and concluded that she suffered from a Personality Disorder NOS ("Not Otherwise Specified"). Appellant's disorder is characterized by three personality features: Narcissistic, Borderline, and Histrionic. Seachrist explained the evaluation: "In layman [sic.] terms, this is somebody who presents having very intense unstable personality interpersonal relationships." Due to the nature of her disorder, Seachrist testified that appellant would need to commit herself to therapy for at least two and up to ten years before making true progress.
 {¶ 24} Appellant does not dispute the results of the evaluations performed by Dan Seachrist. Thus, the test results detailed by Seachrist further buttress the court's finding that permanent custody of Meredith, by PCDJFS, is the only way she can attain a legally secure permanent placement.
 {¶ 25} Finally, the court concluded, pursuant to R.C.2151.414(D)(5), "that Meredith has been abandoned by her mother, Amie Slocum, and by her unknown father and/or putative father, Greg Ward, pursuant to [R.C.] 2151.414(E)(10). The court also finds that Amie Slocum has had her parental rights involuntarily terminated pursuant to [R.C.]2151.414 with respect to Dakota Slocum; a sibling of Meredith Cornell; a factor in 2151.414(E)(11)."
 {¶ 26} The record reflects that appellant has abandoned Meredith pursuant to R.C. 2151.011(C).[2] Further, appellant does not dispute the court's finding regarding Meredith's sibling, Dakota. Thus, the record supports the trial court's findings under R.C. 2151.414(D)(5).
 {¶ 27} In sum, the court's findings pursuant to R.C. 2151.414 are supported by clear and convincing evidence taken from the record. Thus, we shall not disturb the findings of the trial court regarding Meredith's permanent custody.
 {¶ 28} In closing, however, we must give some attention to the overall thematic pervading appellant's brief. Appellant, in general, argues that although she has failed to accomplish the objectives of her case plan, she is currently attempting to do so. Appellant maintains if she were given more time, she would satisfy her case plan and have a better chance of reuniting with Meredith. These points notwithstanding, our task in the current case does not involve an evaluation of appellant's potential to meet the demands of her case plan. To be sure, appellant's dedication to her case plan and cooperation with her social worker are relevant to the current determination; however, a permanent custody hearing must be grounded upon the child's best interests. Hence, as an appellate court reviewing a termination of parental rights, our project is to ensure the lower court derived its conclusions from clear and convincing evidence within the record pursuant to the relevant statutory guidelines. To the extent the trial court's analysis met these lofty standards, we must affirm its decision.
 {¶ 29} Therefore, appellant's sole assignment of error lacks merit and the decision of the Portage County Court of Common Pleas, Juvenile Division, is hereby affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL and DIANE V. GRENDELL, JJ., concur.
[1] Pursuant to R.C. 2151.353(F), "[a]ny temporary custody order * * * shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care * * *." The conclusion of this one year period is known as the "sunset date." Pursuant to R.C. 2151.353(G)(1)-(3), a party may seek up to two 6 month extensions to the one year sunset date. However, even if an extension is granted, a court can nevertheless grant an agency's motion to terminate an extension if said termination is in the best interest of the child.
[2] R.C. 2151.011(C) states "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Because appellant failed to visit or maintain contact with Meredith for more than ninety days, a presumption of abandonment arose which appellant did not attempt to rebut.