IN RE HAYES.

[Cite as *In re Hayes* (1997), 79 Ohio St.3d 46.]

(No. 96–526—Submitted March 18, 1997—Decided June 18, 1997.)

*Robert A. Fry,* Hancock County Prosecuting Attorney, and *Jonathan P. Starn,* Assistant Prosecuting Attorney, for appellant.

*Brimley & Kostyo* and *John C. Filkins,* for appellee.

FRANCIS E. SWEENEY, SR., J.  This case concerns the interpretation of the six-month waiting period imposed by former R.C. 2151.413(A) on a children services agency seeking permanent custody of a child.  Based on the intent of the legislation, we hold that former R.C. 2151.413(A) required that a children services agency seeking permanent custody of a child must have had temporary custody of the child for at least six months immediately preceding the filing of the motion for permanent custody.  Therefore, we affirm the judgment of the court of appeals.

Former R.C. 2151.413(A) stated that a children services agency that has been granted temporary custody of a child may make a motion for permanent custody "if a period of at least six months has elapsed since the order of temporary custody was issued." 142 Ohio Laws, Part I, 237. In finding for the CPSU, the trial court held that even though the CPSU had not had current custody of Richard for a continuous period of six months when the motion for permanent custody was filed, the fact that the CPSU had been granted temporary custody at one point more than six months earlier was sufficient to meet the six-month requirement. However, we believe that given the seriousness of permanently divesting a parent of the right to raise a child, the procedural requirements of former R.C. 2151.413(A) should be strictly construed.

It is well recognized that the right to raise a child is an "essential" and "basic" civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558. Furthermore, a parent's right to the custody of his or her child has been deemed "paramount." *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 297, 369 N.E.2d 1047, 1051–1052. Permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54. Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.* With this in mind, we turn to the construction of former R.C. 2151.413(A).

In construing a statute, a court's primary concern is legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486, 488. "In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1323. In the instant case, the logical purpose for the six-month delay imposed upon a children services agency is to give parents an adequate opportunity to rectify the problems which initially forced the child into temporary custody. The procedures of agency interference are generally graduated in nature, often starting with protective supervision of the child at home, then removal and temporary custody, and ultimately permanent custody if warranted. See R.C. 2151.353. The six-month waiting requirement of former R.C. 2151.413(A) was a procedural safeguard imposed before the finality of permanent custody. Therefore, an agency should not be able to bypass the six-month temporary custody requirement before seeking permanent custody.

Furthermore, statutes concerning the same subject matter must be construed *in pari materia*. *United Tel. Co. v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1131. In the present case, the language of former R.C. 2151.414(A)

reinforces our holding that the intent of the legislature was to require a children services agency to have current custody for six months before seeking permanent custody. Former R.C. 2151.414(A) stated that "[u]pon the filing of a motion pursuant to section 2151.413 of the Revised Code for permanent custody of a child by a public children services agency or private child placing agency that *has* temporary custody of the child, the court shall schedule a hearing." (Emphasis added.) 142 Ohio Laws, Part I, 238.

Former R.C. 2151.414(A), when read *in pari materia* with former 2151.413(A), would indicate that the legislature intended that the children services agency have current temporary custody when moving for permanent custody under the latter statute. *In re Miller* (1995), 101 Ohio App.3d 199, 655 N.E.2d 252. The use of the words "has custody" in former R.C. 2151.414(A) anticipated that the child was currently in the agency's temporary custody.

The procedural mandates set forth by the legislature in former R.C. 2151.413(A) allowed parents a final opportunity to redeem past indiscretions and conform to the requirements for ultimate reunification with their children. A children services agency should not be allowed to deprive parents of this opportunity. Based on the purpose and intent of the legislation, and given the gravity of permanently terminating parental rights, we conclude that the CPSU was required to have had current custody of Richard for at least six months at the time of its motion for permanent custody on December 2, 1994. Since the CPSU failed to comply with this requirement, the trial court had no authority to grant the motion for permanent custody. Therefore, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK and PFEIFER, JJ., concur.

DOUGLAS, COOK and LUNDBERG STRATTON, JJ., dissent.

COOK, J., dissenting. Because I would find that the statutes here do not require that Richard Hayes be committed to foster care for a second six-month stint in order for CPSU to have standing to file for permanent custody, I respectfully dissent.

Like the majority, I focus on the legislative intent in interpreting former R.C. 2151.413, but I reach a contrary conclusion. R.C. 2151.01(A) states:

"[T]he sections of Chapter 2151. of the Revised Code * * * shall be liberally interpreted and construed so as to * * *:

" * * * provide for the care, protection, and mental and physical development of children * * *."

With this direction from the General Assembly, we must liberally construe the statutes in favor of the interests of the child. The majority's concentration on the parents' interests is, therefore, at cross-purposes with the stated intent of the General Assembly.

I also differ with the majority's reading of the statutes at issue. Former R.C. 2151.413(A) required only that "six months ha[ve] elapsed," a meaning imparted plainly by the text of that section. The statute, therefore, is not ambiguous. Thus, the court has no reason to resort to R.C. 2151.414 for an enlarged meaning. The language employed by the General Assembly to establish a waiting period could have explicitly required that the six months of temporary custody immediately precede the filing for permanent custody. It does not.

As textual support for its holding, the majority relies solely on an *implication* supplied by a modifying phrase in the succeeding code section, former R.C. 2151.414(A). The choice of the word "has" in the phrase "agency that has temporary custody," says the majority, justifies adding the requirement of having *current* temporary custody to former R.C. 2151.413.

Former R.C. 2151.414 outlined procedures for hearing a request under former R.C. 2151.413. It would be odd for one section of the Revised Code that established filing criteria to draw its *substantive meaning* from a succeeding section. It would be even more peculiar if that succeeding section is concerned with *procedures* for hearing a request under the preceding section. And oddest of all would be that all this is accomplished not explicitly, but rather by implication. The Ohio Revised Code is not so odd.

Even if one were to agree that former R.C. 2151.413(A) is ambiguous, reference to former R.C. 2151.414 is unavailing because the phrase "that has temporary custody" as used there simply delimits *which agency*.

I conclude, therefore, that the six-month delay requirement, meant to give parents the opportunity to cure a situation requiring agency intervention, should not be extended where, as here, a parent's failure to cure becomes apparent following the child's return to the parental home under protective supervision. The statutory language does not explicitly provide such an extension, and, consequently, the statutorily mandated construction favoring the child's welfare and earliest possible eligibility for adoption should prevail.

DOUGLAS and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.