OPINION
{¶ 1} These consolidated appeals are from the August 22, 2002, judgments of the Court of Common Pleas, Juvenile Division, of Logan County, Ohio, granting permanent custody of Christopher and Marvin Gambrel to the Logan County Children's Services Board and terminating all parental rights of their parents, William and Hope Gambrel.
 {¶ 2} Christopher and Marvin were removed from their parents' custody on November 20, 2000, and placed in the custody of Logan County Children's Services. On May 10, 2002, Children's Services filed a motion for permanent custody of the Gambrel children. The trial court heard the matter on June 26-27, 2002. Thereafter, the trial court granted the motion and awarded permanent custody of both children to Children's Services, thus terminating all parental rights of the appellants, William and Hope Gambrel, on August 22, 2002. In so doing, the trial court found by clear and convincing evidence that the children had been in the continuous custody of Children's Services for fifteen and a half months and that a grant of permanent custody was in the best interests of the children. In addition, the court also found that the appellants previously had a child permanently removed and their parental rights as to this child, Eric Gambrel, had been terminated. Lastly, the trial court found that Children's Services had made reasonable efforts to effect a reunification of these children with their parents. This appeal followed, and Appellants now assert one assignment of error.
 {¶ 3} "No Court Should Grant A Movant Permanent Custody Under O.R.C. 2151.414(D) And 2151.419 Unless Clear And Convincing Evidence Is Presented On Each Factor Essential To The Granting Of Relief Under These Sections."
 {¶ 4} Our review of this matter begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997), 79 Ohio St.3d 46, 48 citing Inre Murray (1990), 52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes, supra (citations omitted); In reMurray, supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" Inre Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra (citation omitted). Thus, it is within these constructs that we now examine the proceedings in the lower court.
 {¶ 5} The Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the agency that has so moved is in the best interest of the child and that one of four enumerated factors applies. R.C. 2151.414(B)(1). Included in this list is that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period[.]" R.C. 2151.414(B)(1)(d).
 {¶ 6} The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citing Merrick v. Ditzler (1915), 91 Ohio St. 256. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 7} Here, the record reflects that Christopher and Marvin were removed from their parents' custody on November 20, 2000, and placed in the custody of Logan County Children's Services. The children remained in the custody of Children's Services from that time until May 10, 2002, when it filed its motion for permanent custody, and remained in the custody of Children's Services until the matter came on for hearing on June 26, 2002. These facts were not disputed during the permanent custody hearing nor are they disputed on appeal to this Court. Thus, at the time that Children's Services filed for permanent custody, the children had been in temporary custody for over seventeen months. However, the trial court was then required by statute to subtract a period of sixty days from this time in making its determination as to whether the children were in the continuous custody of Children's Services for a twelve-month period. See R.C. 2151.414(B)(1). The trial court properly followed this statutory section and found by clear and convincing evidence that the children had been in the temporary custody of Children's Services for a fifteen and a half month period. Based upon this factual finding, the court concluded that R.C. 2151.414(B)(1)(d) was applicable. Our examination of the record reveals that the trial court had sufficient evidence before it to make this finding by clear and convincing evidence.
 {¶ 8} However, our evaluation does not end there. Rather, the trial court must also make the determination as to whether permanent custody is in the best interest of the child by considering all relevant factors, including, but not limited to the five factors listed in R.C.2151.414(D): "(1) The interaction and interrelationship of the child with the child's parents, siblings, * * * (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * * (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child. Among the factors in division (E)(7) to (11), is that "[t]he parent has had parental rights involuntarily terminated * * * with respect to a sibling of the child." R.C. 2151.414(E)(11).
 {¶ 9} The evidence at the permanent custody hearing, which was undisputed, revealed that Christopher had a behavioral problem and functioned at an optimum level when placed in a highly structured environment. In fact, at the time of the hearing Christopher was currently enrolled in the COBRA program, which operates as somewhat of a boot camp for behaviorally challenged boys within the eleven to eighteen-year-old range, because of his violence towards his brother, Marvin, and his negative behavior towards his foster parents. COBRA's administrator, Alice Strawser, testified that Christopher was responding well at COBRA but that he needed to maintain a highly structured environment because of his history of unruliness. Christopher's need for structure was also attested to by the family's counselor, his teacher, the social worker, and the clinical psychologist who evaluated him.
 {¶ 10} In addition, both Christopher's and Marvin's teachers testified that the boys' attitudes changed dramatically when they spent a week with their parents as part of an effort to reunify the family and that the change was not positive. This testimony was also verified by Marvin's foster mother, who also testified that the boys would frequently return home dirty, wearing the same clothing, were tired, and were not given their medication when they went on weekend visitations with their parents.
 {¶ 11} The trial court also found that the Gambrels were unable to provide a stable home environment, having been several months behind in rent and facing eviction, retain employment, or otherwise provide structure for their children. This finding was supported by not only the testimony of the family's counselor and the social worker, but was provided by Hope Gambrel. In addition, Mrs. Gambrel was given the opportunity to explain how she planned to provide better parenting and living arrangements. In response, Mrs. Gambrel stated that she wanted to find and keep a job so that she could have a chance to raise her sons. However, the undisputed evidence also revealed that the Gambrels had a long history of being unemployed, of being unable to sustain employment once hired, and of being forced to move because they could not pay rent, yet, neither had a plan as to how to change this.
 {¶ 12} Although the evidence at the hearing demonstrated that the children enjoyed and looked forward to visits with their parents, the guardian ad litem's report indicated that a grant of permanent custody was in the children's best interests based upon both their physical and emotional needs. Further, the evidence showed that the children had been removed from their parents' care on more than one occasion prior to November 20, 2000, and that the Gambrels had a fifteen-year-old daughter who was in the temporary custody of Mrs. Gambrel's parents who were going to raise her. Moreover, the evidence before the trial court revealed that the Gambrels had their parental rights involuntarily terminated regarding another son, Christopher Gambrel, on April 27, 1989, by the Common Pleas Court of Union County, Ohio. Thus, the trial court correctly determined that R.C. 2151.414(E)(11) applied.
 {¶ 13} Importantly, none of the aforementioned evidence was disputed by the Gambrels. Rather, the Gambrels contend that there was not clear and convincing evidence that permanent custody was in the children's best interest because the family counselor stated that he did not feel comfortable forming an opinion as to whether this was in the best interest of the children. However, this hesitation on the part of the family's counselor does not negate the other undisputed testimony and documentary evidence before the trial court. Thus, the trial court did not err in finding by clear and convincing evidence that permanent custody was in the best interests of the children.
 {¶ 14} Despite this evidence, the Gambrels also maintain that the trial court should not have granted permanent custody to Children's Services because there was not clear and convincing evidence that Children's Services made reasonable efforts at reunification of the family. In support of this assertion, they rely upon the testimony of Hope Gambrel that the case plan was not explained to her and that Children's Services would not provide her with financial assistance in paying her past due rent. However, Mrs. Gambrel testified that the case plan was eventually discussed with her by the social worker, Jen Meyer, at a Cluster meeting. In addition, the only other assistance that Mrs. Gambrel testified she sought was help with rent. Such evidence does not amount to an error of judgment on the part of the trial court in finding that the agency had made reasonable efforts for reunification.
 {¶ 15} To the contrary, the Gambrels were given several weekend visits as well as an entire week with their children. During these visits, the children were late to school, misbehaved while at school, were dirty, wore the same clothing, and were not given their medications. Furthermore, they returned to their foster parents with behavioral problems that required time and effort on the part of the foster parents to reverse. Moreover, the Gambrels were experienced in having children's services agencies intervene with their children, yet they were constantly struggling to obtain and keep employment and to provide stable housing regardless of any efforts made by these agencies. Thus, there was sufficient evidence for the trial to find as it did that reasonable efforts at reunification were made by Children's Services.
 {¶ 16} Lastly, this record before this Court reveals that the Gambrels were given numerous opportunities throughout the last several years to keep their children. However, despite any efforts made by various children's services agencies, as well as the courts, they persistently were unable to support themselves, let alone their children. In addition, they provided these children with an extremely unstructured lifestyle, which resulted in attitudes in their children of disrespect, especially Christopher, who now needs a highly structured environment in order to maintain calm in his life. The evidence before the trial court was clear that this type of environment is not something that the Gambrels were equipped to provide. Thus, the evidence was sufficient for the trial court to find by clear and convincing evidence that permanent custody to Children's Services was appropriate.
 {¶ 17} For these reasons, the assignment of error is overruled, and the judgments of the Court of Common Pleas, Juvenile Division, of Logan County, Ohio are affirmed.
Judgments affirmed.
 BRYANT, P.J., and CUPP, J., concur.