{¶ 21} A parent's right to raise a child is an essential civil right.[1] The termination of parental rights is the family law equivalent to the death penalty in criminal law.[2] Thus, courts must afford the natural parent every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of their child.[3]
 {¶ 22} R.C. 3107.07, governing consent to adoption, states that a natural parent's consent to an adoption is not required where that parent has failed, without justifiable cause, to communicate with the child or to provide for the maintenance and support of the child for a period of at least one year prior to the filing of the adoption petition.[4] (Emphasis added.) Therefore, the critical inquiry in this matter is whether or not the failure to communicate with the children was "justified." For the following reasons, I believe it was.
 {¶ 23} In its simplest form, this inquiry must answer the question of whether it is possible for one to have voluntarily failed to communicate with their children when they have been "restrained and enjoined from coming" to their former spouse's residence "or any other place where he and/or the minor" children reside? To ask the question is to answer it.
 {¶ 24} Clearly, appellant does not ask this court to find her addictions and her earlier behavior towards her children to be worthy of commendation. However, that is not the legal standard to be met. It is arbitrary and unreasonable to punish a parent for past behavior when their actions in the present demonstrate a willingness and ability to perform as a parent. The question is whether appellant's failure to communicate with her children for a one-year period was justified. A simple review of the facts demonstrates it was.
 {¶ 25} Appellant is correct in her assertion that the restraining order in effect against her barred her from communicating with her daughter. Charles Doyle, the natural father, testified at the adoption hearing that he sought the restraining order to prevent appellant from randomly appearing at his home intoxicated and disruptive, which she had done in the past. The restraining order as issued reads: "The Defendant, [Couch], is hereby restrained and enjoined from coming to [Doyle's] place of residence * * * or any other place where he and/or the minor child, Veronica Doyle may be."
 {¶ 26} Thus, the restraining order prohibited appellant from physically approaching Doyle's residence or anywhere he was with Veronica. Doyle subsequently gained custody of appellant's son Cody. Thus, the restraining order had the effect of prohibiting appellant from physically approaching both Veronica and Cody as well, as he resided in the home.
 {¶ 27} While I do not equate visitation with communication, I would suggest that appellee and the trial court cannot have it both ways. They cannot on the one hand enforce a court order prohibiting a parent from "approaching" her children; and then on the other hand use that failure to communicate as justification to terminate the parent's natural rights. While the restraining order does not provide per se justification for a failure to communicate, it certainly affects the nature and quality of the communication.
 {¶ 28} The dilemma becomes far more troubling, however, when viewed in light of appellant's attempts to comply with the court's remedial measures. Here we are faced with a mother who incredibly is required to PAY TO VISIT with her own children! Without commenting on the propriety of this extraordinary visitation requirement, it passes from onerous to abusive when it is implemented. When appellant attempted to comply with the court's pay-to-visit order, she was ignored by the very court that issued the order!
 {¶ 29} Appellant wrote a letter to the trial court on May 15, 2002, notifying the court that she was prepared to pay for supervised visitation with Cody pursuant to the previous court order. The trial court did not address that request until November 18, 2002, six months later, when it stayed the visitation request until AFTER the adoption petition hearing. Therefore, her request remained pending in the trial court for over six months until the trial court ultimately concluded that the issue would be held in abeyance until the conclusion of the adoption proceeding. Thus, appellant's attempt to comply with the court's own orders was counted against her, as the court permitted the clock to run on the one-year statute while appellant literally waited at the courthouse steps for an answer.
 {¶ 30} At the adoption hearing, the trial court applied the statutory analysis to determine whether appellant had communicated with her children for one year prior to the filing of the adoption petition. By its own orders, the trial court, through both the restraining order and the tabling of the visitation request, prevented appellant from communicating with the children for the duration of the requisite one-year time period. The court then concluded that her lack of communication was not justified and appellant's consent was not required before the adoption could proceed. That is not the law in Ohio.
 {¶ 31} The facts in this matter are very clear. And those facts clearly demonstrate appellant did attempt to communicate with her children by contacting the court for visitation as the previous court order instructed. The court all but ignored the request until six months later when it decided to stay the request pending the adoption proceedings. Five of those six months were during the one-year statutory time period. The court prohibited contact and then ultimately used that time against her by finding her lack of communication was not justified. The court first prevented appellant from communicating with her children and then punished her for not communicating with those same children. This practice does not comport with the constitutionally protected liberty interest of the parent/child relationship.[5]
 {¶ 32} Therefore, I conclude the trial court committed an abuse of discretion in finding that appellant's failure to communicate with her children for one year prior to the filing of the adoption petition was without justifiable cause and that her consent to the adoption was not required. The judgment of the trial court should be reversed.
[1] In re Murray (1990), 52 Ohio St.3d 155.
[2] In re Hayes (1997), 79 Ohio St.3d 46, 48.
[3] Id.
[4] R.C. 3107.07(A).
[5] In re Adoption of Zschach (1996), 75 Ohio St.3d 648, 653, citing Quilloin v. Walcott (1978), 434 U.S. 246, 255.