OPINION
{¶ 1} This appeal is from the July 15, 2004 judgment of the Court of Common Pleas, Juvenile Division, of Seneca County, Ohio, granting permanent custody of Kindra Adams to the Seneca County Department of Jobs and Family Services ("DJFS") for purposes of adoption. This judgment terminated the parental rights of Kindra's biological parents, Joseph Adams ("Father") and Victoria Balderson ("Victoria"), formerly known as Victoria Shackelford.
 {¶ 2} Kindra Adams was born January 15, 2003. Shortly after her birth, she was hospitalized and diagnosed with a sleep apnea disorder. Victoria had taken her to Fostoria Community Hospital after she discovered that Kindra's lips had started turning blue and she was not breathing. Kindra was then transferred to Toledo Hospital where she was admitted. Victoria was told at that time that she would be required to complete a sleep apnea monitor class prior to Kindra's release from the hospital so that she would be able to deal with Kindra's condition, which she failed to complete. Additionally, at the time of Kindra's expected release the hospital could not get in touch with Victoria, and her family members could not locate her. At this time, the Seneca County DJFS filed a complaint and was granted emergency temporary custody of Kindra.
 {¶ 3} Although these events precipitated Kindra's removal from her parents' care, this was not the beginning of Victoria's involvement with the DJFS. Social workers from the department first began working with Victoria and Joseph while she was still pregnant with Kindra, helping her with her then one-year-old son, Kindra's half-brother, Ryan Shackelford. According to the social worker, Victoria was not taking Ryan to his medical appointments, was not attending school, and neither she nor Joseph was employed. Victoria blamed the missed appointments on transportation issues — she said there was no one that could take her and Ryan to the appointments and she did not have her own mode of transportation.
 {¶ 4} The DJFS's Family Preservation Unit developed a voluntary case plan with Victoria in order to keep the family together. Case workers taught Victoria parenting skills, brought her housekeeping supplies and food because she could not afford these items. She was also given coupons for public transportation, which she apparently never utilized. Additionally, the case worker attempted to help Victoria get back into school and find employment.
 {¶ 5} The Family Preservation Unit was working with Victoria and Joseph when Kindra was born. When Kindra was ready to be released from the Toledo hospital following the diagnosis of sleep apnea, Victoria had failed to obtain training for monitoring Kindra's condition and was therefore unable to properly care for the child. Kindra's condition required that she receive breathing treatments every four hours with a nebulizer, and use of an apnea monitor. It also required several follow-up medical appointments with the child's pulmonary specialist. The DJFS located a foster family who came to the hospital and received the special training. Since Victoria had not been taking Ryan to his medical appointments, had not obtained proper training to care for Kindra's condition, and could not be located by either the hospital or DJFS, the department took emergency custody of the children, and Kindra immediately went into foster care, where she has remained throughout the proceedings.[1]
 {¶ 6} An adjudicatory hearing was held on May 14, 2003 wherein Kindra's parents, Victoria Shackelford and Joseph Adams, each individually admitted that Kindra was a neglected child pursuant to R.C. 2153.03(A)(3). Such finding was entered into the trial court's June 27, 2003 judgment entry. The trial court ordered that Kindra remain in the temporary custody of DJFS, and amended the case plan to reflect a finding of neglect.
 {¶ 7} On March 31, 2004 the DJFS filed a motion for permanent custody. On April 7, 2004 a review hearing was held, and both parents were ordered to submit to drug testing. As required by R.C. 2151.414(A)(1), the trial court conducted a hearing on the motion for permanent custody on July 6 and 8, 2004. The father, Joseph Adams, did not appear at the hearing on the motion for permanent custody. Upon consideration of the evidence presented at the hearing, the trial court made ninety-nine findings of fact and conclusions of law — the court granted the motion for permanent custody and ordered that DJFS take permanent custody of Kindra for purposes of adoption. Victoria and Joseph's parental rights and responsibilities were terminated. Victoria now appeals, asserting one assignment of error.
The Court's grant of permanent custody of Kindra Adams to theSeneca County Department of Jobs and Family Services was againstthe manifest weight of the evidence.
 {¶ 8} Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes,supra (citations omitted); In re Murray, supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'"In re Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes, supra (citations omitted). Thus, it is within these constructs that we now examine the assignment of error.
 {¶ 9} The Revised Code sets out a two-pronged test to be applied when considering a motion for permanent custody. Under this test, the trial court must determine, by clear and convincing evidence, (1) that a grant of permanent custody to the DJFS is in the best interest of the child and (2) that one of four enumerated factors applies. R.C. 2151.414(B)(1).
 {¶ 10} The Supreme Court of Ohio has held that "clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear andunequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, citing Merrick v. Ditzler (1915),91 Ohio St. 256, 110 N.E. 493. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 11} As to the second prong of the test, the trial court properly found that two of the four enumerated factors in R.C.2151.414(B)(1) applied. First, the trial court may grant the motion for permanent custody if it finds that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twentytwo month period." R.C.2151.414(B)(1)(d). That section also provides:
For purposes of division (B)(1) of this section, a child shallbe considered to have entered the temporary custody of an agencyon the earlier of the date the child is adjudicated pursuant tosection 2151.28 of the Revised Code or the date that is sixtydays after the removal of the child from home.
R.C. 2151.414(B)(1). In the instant case, the record establishes that Kindra was removed from the home on February 7, 2003. Sixty days from that date was April 5, 2003. The record also indicates that Kindra was first adjudicated a neglected child on May 14, 2003. Therefore, because the hearing on the motion for permanent custody was conducted on July 6 and 8, 2004, it is clear that Kindra was in the temporary custody of the agency for over twelve consecutive months under either standard.
 {¶ 12} Second, the trial court specifically found that Kindra could not be placed with either Victoria or Joseph within a reasonable time. An additional factor a court may find to grant permanent custody to the agency is that "[t]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C.2151.414(B)(1)(a). For the following reasons, we find that the trial court had sufficient evidence to find by a clear and convincing standard of proof that Kindra could not be placed with either parent within a reasonable time.
 {¶ 13} R.C. 2151.414(E) provides a list of sixteen factors a court shall consider when determining whether a child can be placed with either parent within a reasonable time. The facts in the record demonstrate that several of these factors require a finding that the child could not be placed with the parents. For example, several facts in the record demonstrate that the parents have "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1).
 {¶ 14} To begin, Victoria failed to fulfill several requirements of the case plan. Initially, she refused to attend the required substance abuse counseling, and then she failed to satisfactorily complete the counseling, having been closed out of one counseling program for failure to attend. Her caseworker testified that her attendance at the counseling sessions "has not been acceptable by any means." Additionally, Victoria failed to actively participate in parenting classes as required by the case plan. Although she attended the classes, she did not demonstrate any skills learned in the program, and was consistently rebuked by her instructors for inadequate participation — she fell asleep in classes, played hand-held games, and at one point left a class after a disruptive argument with her boyfriend. Likewise, Joseph failed to demonstrate to either the trial court or his case workers that he had attended any counseling or parenting classes.
 {¶ 15} Victoria and Joseph have both also failed to find permanent housing or employment. The record indicates that Victoria has lived in several different places during the pendency of this case, usually for very short times. She indicated that her life was always "in and out," and that she had only once lived in one place for longer than six months. At one point during the case she was living out of a garage, and she also indicated to a caseworker that in March of 2004 she was homeless. Additionally, neither parent has been able to maintain stable employment. Joseph has worked two jobs since Kindra was placed in temporary custody, neither of which lasted longer than a month. Victoria likewise has been unable to find work.
 {¶ 16} Additionally, Kindra's parents have been repeatedly incarcerated during the pendency of this action, which would prevent them from providing care for the child. See R.C.2151.414(E)(13). Victoria was incarcerated on multiple occasions while Kindra was in the temporary custody of DJFS for various offenses involving underage drinking and driving without a license. In fact, Victoria was incarcerated on the date of the permanent custody hearing. Joseph had also been incarcerated and was on probation at the time of the permanent custody hearing.
 {¶ 17} Based on the foregoing, there was sufficient evidence for the trial court to find that Kindra could not be placed with either parent within a reasonable time. The evidence before the court demonstrates that several factors listed in R.C.2151.414(E) applied, requiring the trial court to make this finding. Therefore, two of the enumerated factors in R.C.2151.414(B)(1) applied, fulfilling the second prong of the test.
 {¶ 18} The first prong of the test for granting permanent custody to the DJFS requires a court to find that a grant of permanent custody is in the best interests of the child. In making this determination, the trial court should look at all relevant factors, including those listed in R.C. 2151.414(D). After reviewing these factors, the trial court found that it was in Kindra's best interests to grant permanent custody to the DJFS for placement with the foster parents.
 {¶ 19} The first factor to be examined under R.C. 2151.414(D) is the child's interactions and relationships with his biological parents, siblings, relatives and those with his foster family. In the instant case, Kindra appears to have almost no relationship with her extended family, and her relationship with her parents has been limited to one half-hour visit every two weeks since she was a month old. Victoria and Joseph have not been able to progress beyond supervised visitation; in fact their visitation times have been reduced since the beginning of this case. At the same time, Kindra has continuously lived with her foster family since the onset of this case more than a year and a half ago. Her foster parents have expressed an interest in adopting Kindra, and they have demonstrated a loving relationship with the child. Moreover, case workers testified that Kindra gets upset when she is separated from her foster parents, and expresses joy when she is returned to them. The child does not appear to offer the same emotional responses with Victoria and Joseph. The foster family has been able to create a stable, loving environment for Kindra — this is sufficient evidence for the trial court to find that placement with the foster family is in Kindra's best interests.
 {¶ 20} The second factor in R.C. 2151.414(D) is the wishes of the child. See R.C. 2151.414(D)(2). In the instant case, Kindra has not reached the age where she can express herself verbally. However, her guardian ad litem has opined that it is in Kindra's best interests to grant permanent custody to DJFS for purposes of placement with the foster family.
 {¶ 21} The third factor to consider is the custodial history of the child. See R.C. 2151.414(D)(3). As previously discussed, Kindra was removed from her parent's care less than one month after she was born, and as been living with the same foster family since that time. She has been living with this family for more than twelve consecutive months. Id. Therefore, the trial court had sufficient evidence to find this factor in favor of terminating the parental rights and granting the motion for permanent custody.
 {¶ 22} The final factor in R.C. 2151.414(D) is "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." R.C. 2151.414(D)(4). For reasons previously discussed, including the parents' repeated incarceration, their failure to maintain stable housing and employment, and the fact that they have repeatedly failed to fulfill the case plan, the trial court had sufficient evidence to find that a secure placement could only be achieved by granting permanent custody to the DJFS.
 {¶ 23} Accordingly, the record contained sufficient evidence to find that it is in Kindra's best interests to grant permanent custody to the DJFS. There was sufficient evidence for the trial court to make its findings by a clear and convincing degree of proof. The assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment Affirmed.
 Cupp and Rogers, J.J., concur.
[1] Ryan Shackelford, Kindra's half brother, was also removed from Victoria's care and custody was given to Ryan's biological father, Charles Thomas.