[Cite as *In re J.S.*, 2021-Ohio-4078.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: J.S.

C.A. No.     29951

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 18 10 1046

DECISION AND JOURNAL ENTRY

Dated: November 17, 2021

CALLAHAN, Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and awarded permanent custody of J.S. to Summit County Children Services Board ("CSB" or "the agency"). This Court reverses and remands.

I.

{¶2}    Mother and Father are the biological parents of J.S. (d.o.b. 10/21/09). The parents were divorced but living together, along with J.S. and his half-sibling, another child of Father. Both children had previously been involved with the agency, but J.S. had been returned to Mother's legal custody, while the half-sibling had been returned to Father's legal custody.

{¶3}    Mother and Father have a history of opiate abuse. Father was arrested on drug charges, and various drugs and paraphernalia were found in the parents' home. Based on these circumstances, as well as Mother's untreated mental health issues, CSB filed a complaint

alleging that J.S. and his sibling were abused (endangered) and dependent children. Both children were removed and placed in the emergency temporary custody of the agency.

{¶4} Early in the case, Mother applied for and obtained appointed counsel. Although she was not present at the adjudicatory hearing, Mother's attorney waived her rights on her behalf and stipulated to a finding that J.S. was a dependent child.[1] The agency withdrew its allegation of abuse. Both parents attended the dispositional hearing and stipulated to temporary custody to CSB. The juvenile court adopted the agency's case plan as an order. Mother's objectives addressed basic needs, substance abuse, and mental health issues.

{¶5} Mother was present for the first review hearing. Although she continued to use illegal drugs notwithstanding her participation in medically assisted treatment ("MAT") with suboxone and methadone, she was employed, had appropriate housing, and visited regularly with J.S. The child remained in the agency's temporary custody.

{¶6} Mother appeared for the second review hearing, although her attorney did not. Mother waived her right to counsel for that specific hearing. While she was continuing to comply with some case plan objectives, Mother was still testing positive for opiates despite her participation in MAT. J.S. was again retained in the agency's temporary custody.

{¶7} By the first sunset hearing, Father had ceased participating in the case. Mother was present with her attorney. All participating parties agreed to return J.S. to Mother's legal custody under the protective supervision of CSB. At the time of the hearing, Mother had maintained her housing and employment, was testing negative for illegal drugs, and was having regular and overnight visits with the child.

---

[1] CSB presented evidence at the adjudicatory hearing, as well, because Father was not present or represented by counsel.

{¶8} After the next review hearing, J.S. remained in Mother's legal custody under the agency's protective supervision. CSB removed Mother's basic needs case plan objective based on her consistent maintenance of employment and housing. The agency added a counseling requirement for the child. Shortly thereafter, CSB moved for a second six-month extension of its protective supervision. Although Mother had been inconsistent in participating in MAT, tested positive for cocaine, and failed to follow through with the child's counseling, the agency asserted that termination of its protective supervision was likely to occur within the extension period.

{¶9} Within approximately two weeks, however, CSB filed a motion to modify the disposition from protective supervision to emergency temporary custody and temporary custody. The agency removed J.S. from Mother's home and filed an amended motion for a second six-month extension of temporary custody. After a motion hearing, the juvenile court placed the child in the agency's temporary custody. Mother's visitation was to be supervised until her drug screens were negative. After the second sunset hearing, the trial court granted a six-month extension of temporary custody.

{¶10} Mother attended the next review hearing virtually. The agency reported that the child's maternal grandparents in Tennessee had been approved for placement after a home study via the Interstate Compact on the Placement of Children. CSB thereafter filed a motion for legal custody of J.S. to the child's grandparents. Two weeks later, however, the agency moved for permanent custody, asserting that the grandparents wished to pursue permanency for the child through adoption. CSB alleged that Father had abandoned the child, that J.S. had been in the temporary custody of the agency in excess of twelve months during a consecutive 22-month period, and that the siblings' prior adjudications met statutory first-prong grounds for permanent

custody. In addition, the agency alleged that permanent custody was in the best interest of the child.

{¶11} Mother did not appear at the next hearing, although her attorney was present. The juvenile court found that the agency had used reasonable efforts to finalize a permanency plan for the child, and it scheduled pretrial and permanent custody hearing dates. The juvenile court copied both Mother and her attorney on this order. In a separate order, the juvenile court stated that the permanent custody hearing would be conducted via Zoom. The order added that the link would be sent to attorneys of record to share with their clients, but that parties could request the link by emailing the court. This order was copied to Mother's attorney but not to Mother personally.

{¶12} There is no dispute that CSB properly served Mother with notice of the permanent custody hearing. At the pretrial which was attended only by attorneys involved in the case, Mother's attorney orally moved to withdraw from further representation.[2] The juvenile court issued a judgment entry stating the following:

> The Motion of Attorney Michael George to withdraw as counsel for mother based upon her failure to maintain contact with him is granted.

> Should either parent wish to have counsel appointed in this case, they must make application with the Court forthwith. The failure to do so will be deemed a knowing, intelligent and voluntary waiver of their right to counsel.

Both the judgment entry and notice of such were copied on Mother's attorney and Mother personally.

{¶13} The juvenile court held a hearing on the agency's motion for permanent custody. Mother was neither present nor represented by counsel at the hearing. After the hearing, the

juvenile court terminated both parents' parental rights and placed J.S. in the permanent custody of CSB. Two weeks later, the juvenile court appointed new counsel for Mother upon her request. Although Mother requested appointed counsel for purposes of the appeal, the trial court's order appointed counsel for purposes of an upcoming file review hearing before a magistrate.

{¶14} Mother's newly appointed counsel filed a timely appeal from the juvenile court's judgment terminating her parental rights. In addition, Mother's attorney filed a praecipe with the court reporter for transcripts of the permanent custody hearing and "all other testimony, pre-trial hearings, arguments, and evidence made in any hearing in the above-entitled case." The juvenile court ordered a stay of the permanent custody judgment pending appeal. Mother raises two assignments of error for this Court's review. We consolidate the assignments of error to facilitate discussion.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR AND DENIED MOTHER DUE PROCESS WHEN IT PERMITTED COUNSEL FOR MOTHER TO WITHDRAW.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN DENYING MOTHER[ ] HER RIGHT TO BE REPRESENTED BY COUNSEL AT THE PERMANENT CUSTODY HEARING.

{¶15} Mother argues that the juvenile court erred when it allowed her appointed counsel to withdraw at the pretrial conference and then proceeded with the permanent custody hearing in

---

[2] There is no written motion to withdraw filed by Mother's appointed counsel in the record. Neither is there any order scheduling a hearing on the attorney's motion to withdraw.

her absence and the absence of counsel to represent her interests in the belief that Mother had knowingly, voluntarily, and intelligently waived her right to counsel. This Court agrees with Mother's assertion of juvenile court error.

{¶16} Parents have a fundamental liberty interest in the care and custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). When the state seeks to terminate parental rights in a permanent custody proceeding, the parents are entitled to every procedural and substantive protection allowed by law. *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). This includes the right to legal counsel at all stages of the proceedings initiated under R.C. Chapter 2151, as well as the appointment of counsel based on a parent's indigency. R.C. 2151.352.

{¶17} Although a party may waive fundamental rights, the Supreme Court of Ohio has clarified in these cases that:

> When the state seeks to terminate a parent's parental rights, the parent has the right to counsel. The parent cannot be deprived of that right unless the court finds that the parent has knowingly waived the right to counsel. Waiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing.

*In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, syllabus. In determining whether a parent has validly waived her right to counsel so that the trial court may properly allow her attorney to withdraw prior to the permanent custody hearing, the high court requires the juvenile court to make a two-part inquiry of counsel. *Id.* at ¶ 6, 8. Specifically, the court must "ascertain that counsel's attempts to communicate with and obtain the cooperation of the client were reasonable, and [then] * * * verify that the failure of this communication resulted in the inability of counsel to ascertain the client's wishes." (Internal quotations omitted.) *Id.* at ¶ 6, quoting *In re Sadie R.*, 6th Dist. Lucas No. L-04-1057, 2005-Ohio-325, ¶ 36. Relying on the Supreme Court's holding in *In re R.K.*, this Court has reversed a permanent custody judgment where the juvenile court

failed to make the requisite finding that a parent had effectively waived her right to counsel prior to allowing appointed counsel to withdraw. *In re K.R.*, 9th Dist. Wayne No. 17AP0037, 2018-Ohio-1316, ¶ 10.

{¶18} In this case too, there is nothing in the record to indicate that the juvenile court found that Mother had knowingly, voluntarily, and intelligently waived her right to counsel when the court allowed appointed counsel to withdraw at the pretrial. The judgment entry granting counsel's motion to withdraw further contains no findings regarding counsel's attempts to communicate with Mother, whether such attempts were reasonable, and how counsel's inability to communicate with Mother resulted in his inability to ascertain her wishes regarding the child's custody. Accordingly, the juvenile court failed to recite any basis upon which a finding of waiver might have been made. Moreover, the juvenile court's statement that Mother's future failure to reapply for appointed counsel would constitute her knowing, voluntary, and intelligent waiver of counsel is insufficient to support counsel's withdrawal at the pretrial.

{¶19} On the record immediately prior to the permanent custody hearing, the juvenile court noted that Mother had been represented by counsel at one time, but that the court had allowed counsel to withdraw upon counsel's request at the pretrial. The trial court further noted that it had received no requests from either parent for appointed counsel since the pretrial. It did not expressly find, however, that Mother had waived her right to counsel. In its final judgment terminating parental rights, the juvenile court again failed to make any finding that Mother had waived her right to representation by counsel at the permanent custody hearing.

{¶20} Because the juvenile court never made the requisite finding that Mother knowingly waived her right to counsel prior to allowing her attorney to withdraw, this Court must reverse. We further reject CSB's argument that this Court is required to presume regularity

in the absence of a transcript of the pretrial. This is not the case in which the appellant failed to request a transcript of the key proceedings, i.e., the pretrial. In fact, Mother requested preparation of the transcript from the pretrial. As any off-the-record discussion was not preserved for transcription, however, no record of the pretrial colloquy was created for this Court's review. In the absence of the requested transcript of any recording evidencing that the juvenile court had made the requisite finding during the pretrial prior to granting counsel's motion to withdraw, the trial court should have made the necessary finding in its judgment entry. It did not. The juvenile court's judgment instead granted counsel's oral motion to withdraw without first making the required finding that Mother had effectively waived her right to counsel. Mother's assignments of error are sustained.

## III.

{¶21} Mother's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

PAMELA HAWKINS, Attorney at Law, Guardian ad Litem.

R.W., pro se, Appellee.