OPINION
{¶ 1} The appellant, Linda Archer, appeals the November 19, 2003 judgments of the Common Pleas Court, Juvenile Division, of Allen County, Ohio, granting permanent custody of her two children, Adrienna and Steven Archer, to the Allen County Children Services Board ("ACCSB").
 {¶ 2} In September of 2000, paramedics were called to the home of Linda Archer, who was complaining of stomach pains. As the paramedics were treating Linda, they heard a child crying and found the Archer children in a locked room, which Linda admitted she did to them as a form of punishment. As a result, ACCSB was contacted. Initially, the children, including a third child named Logan who has since been placed with his biological father, were not removed from the home. On December 18, 2000, Adrienna and Steven were adjudicated dependent, placed under the protective supervision of ACCSB, and a case plan was begun for the family. Included in this plan were counseling and parenting classes for Linda, school for Logan, who was five, the Head Start program for Adrienna, who was four, and Access Early Start for Steven, who was two.
 {¶ 3} On February 12, 2001, Linda and her boyfriend, Matt Fought, overdosed on drugs while all three children were in Linda's home. Linda and Matt were found unconscious and taken to the hospital, where Linda remained in a coma for three days. As a result of Linda's overdose and subsequent hospitalization, the children were removed from Linda's home, placed in temporary custody, and the case plan continued with the goal of reunification of the children with Linda. Originally, Adrienna was placed in the care of her paternal grandmother, and Steven was placed with his paternal aunt and uncle. However, these family members disagreed with reunification with Linda and became distraught, which led to placement of Adrienna and Steven with unrelated foster parents.
 {¶ 4} In July of 2001, Linda was arrested following an incident where she became intoxicated and fired an air pistol outdoors, purportedly to obtain Matt's attention after the two argued. Over the next several months, the case plan was modified to include a drug and alcohol evaluation and the completion of a psychological evaluation of Linda. In addition, Linda was ordered to cooperate and participate in the completion of these evaluations and to cooperate with agency personnel and the guardian ad litem regarding visitations or interviews in regards to the children.
 {¶ 5} ACCSB filed its motions for permanent custody of Adrienna and Steven on July 15, 2002. Linda opposed these motions. However, the children's father, Anthony Archer, did not oppose these motions and requested that the trial court grant permanent custody of his children to ACCSB. A three-day hearing was held on these motions on October 8, 2002, March 18, 2003, and April 10, 2003, wherein ACCSB, Linda, and Anthony presented evidence in support of their respective positions. In addition, the guardian ad litem filed his reports as to these two children on October 8, 2002, and recommended that permanent custody be granted to ACCSB. Following the final day of the hearing, the trial court took the motions under advisement and rendered its judgments on November 19, 2003, granting permanent custody of both children to ACCSB. This appeal followed, and Linda now asserts two assignments of error.
The trial court failed to made [sic] findings consistentwith the standard of clear and convincing evidence.
 The finding of permanent custody is against the manifestweight of the evidence.
 {¶ 6} As these assignments of error are related, they will be discussed together. This Court's review of this issue begins by noting "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990),52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes, supra (citations omitted); In re Murray,
supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" In re Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra (citation omitted). Thus, it is within these constructs that we now examine these assignments of error.
 {¶ 7} Linda maintains that the trial court erred in granting permanent custody to ACCSB because ACCSB did not use reasonable and diligent efforts to assist her in eliminating her problems. Specifically, she asserts that ACCSB merely referred her to a counselor rather than having her complete a psychological assessment and follow up with a licensed psychiatrist, which she needed given her emotional problems. In addition, Linda contends that the trial court's findings that she failed to provide support and commitment to the children as well as food, clothing, shelter, and other basic needs were not supported by clear and convincing evidence. For the following reasons, we disagree.
 {¶ 8} Once a child has been placed in the temporary custody of a children's services agency, the agency is required to prepare and maintain a case plan for that child. R.C.2151.412(A)(2). Further, R.C. 2151.412(E)(1) states that "[a]ll parties, including the parents * * * are bound by the terms of the journalized case plan." One of the enumerated goals of a case plan for a child in the temporary custody of a children's services agency is "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." R.C. 2151.412(F)(1)(b). This goal is commonly referred to as reunification.
 {¶ 9} However, once an agency files a motion for permanent custody, the Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the agency that has so moved is in the best interest of the child and that one of four enumerated factors applies. R.C. 2151.414(B)(1). Included in this list is that
[t]he child is not abandoned or orphaned or has not been inthe temporary custody of one or more public children servicesagencies * * * for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999, andthe child cannot be placed with either of the child's parentswithin a reasonable time or should not be placed with the child'sparents.
R.C. 2151.414(B)(1)(a). In determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with the parents, the Revised Code requires that the court "consider all relevant evidence." R.C. 2151.414(E). This statute further states that "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[,]" if it finds by clear and convincing evidence that one or more of sixteen enumerated factors exists. R.C. 2151.414(E).
 {¶ 10} The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear andunequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citing Merrick v. Ditzler (1915), 91 Ohio St. 256. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross,
supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 11} Notably, Linda does not contest whether granting of permanent custody of her two children to ACCSB was in their best interests. Rather, she challenges the court's finding that the children could not be placed with her within a reasonable time or should not be placed with her. In making this determination, the court found that three of the factors enumerated in R.C.2151.414(E) were present.
 {¶ 12} First, the court found that following the placement of the children outside their home and notwithstanding reasonable case planning and diligent efforts by the agency to assist Linda in remedying the problems that initially caused the children to be placed outside the home, she had failed continuously and repeatedly to substantially remedy the condition causing them to be placed outside of their home. See R.C. 2151.414(E)(1). This finding was supported by clear and convincing evidence.
 {¶ 13} Specifically, Linda continued to live with Matt despite the fact that her February 13, 2001 overdose, which was the initial reason for placement of the children outside of her home, occurred after she and Matt fought and despite the fact that the two had numerous altercations throughout the time the children were placed outside the home, including an incident involving the firing of a pistol. Furthermore, Linda refused to permit ACCSB workers to enter her home on numerous occasions, due, in part, to instructions from Matt that he did not want them around his belongings, even though the court specifically ordered her to cooperate with ACCSB.
 {¶ 14} In addition, Linda did not seek counseling for three months after her overdose, despite recommendations by ACCSB and hospital staff. Although she now maintains that ACCSB did not provide reasonable case planning and diligent efforts to assist her by requiring a complete psychological assessment and follow up with a licensed psychiatrist rather than mere counseling, this contention is contrary to the evidence. Linda testified that she completed a psychological assessment. However, she refused to release the information obtained therein to ACCSB. As a result, ACCSB was unaware of the results of the assessment and whether follow up was recommended. Thus, any fault in this regard was not due to the actions and/or inactions of ACCSB. Given all of the aforementioned evidence, the trial court's finding as to R.C.2151.414(E)(1) was supported by clear and convincing evidence.
 {¶ 15} The court also found that Linda had demonstrated a lack of commitment toward her children by failing to regularly support, visit, or communicate with them when able to do so, and by other actions had shown an unwillingness to provide an adequate, permanent home for the children. See R.C.2151.414(E)(4). The trial court further found that Linda was unwilling to provide food, clothing, shelter, and other basic necessities for the children or to prevent the children from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. See R.C. 2151.414(E)(14). A review of the record reveals that these findings were also supported by clear and convincing evidence.
 {¶ 16} Although Linda exercised roughly 70% of her allotted visitation time with the children, which ACCSB conceded was well above many other parents with ACCSB cases, she often missed visits and failed to notify ACCSB. This resulted in the children's disappointment as they expected to visit with their mother during these times. In addition, while she was usually home when ACCSB brought her children for their regular Tuesday visitation, Linda missed numerous other appointments at her home with the ACCSB workers assigned to her case, and often refused to answer the door when they arrived even though she was at home. In one attempt to visit Linda's home, an ACCSB family aide worker found her leaving from the back of the home.
 {¶ 17} Throughout the two years of ACCSB's involvement, Linda was also unemployed. Not until three months after the motions for permanent custody were filed did she obtain employment. She also experienced periods when she was without electricity and gas, and she never had a telephone. Further, despite the efforts of ACCSB to assist Linda in obtaining financial aid from the Social Security Administration and other sources, including transportation to these agencies, Linda often failed to follow through with the necessary paperwork. Additionally, Linda was uncooperative with Steven's doctor when he told her that Steven needed to have a tonsillectomy or else he would continue to be sick, and she was not present at the hospital during Steven's surgery but came to see him later that day. Linda also denied the need for Steven to have additional surgery despite the advice of doctors. Accordingly, the trial court's findings that the factors enumerated in R.C. 2151.414(E)(4) and (14) were present were supported by clear and convincing evidence.
 {¶ 18} In sum, Linda expressed hostility towards and was uncooperative with ACCSB and others providing assistance to her children throughout ACCSB's involvement with her children. While she regularly visited with the children and learned the appropriate way to conduct herself during these visits, she did little to otherwise follow the case plan in order to be reunified with her children despite the efforts of ACCSB. She repeatedly refused access to her home, failed to meet with the guardian ad litem despite his attempts to speak with her, continued to reside with her boyfriend despite the demonstrated problems with this relationship, and made little effort to obtain employment during the two years preceding ACCSB's motions for permanent custody. Therefore, the trial court did not err in granting permanent custody to ACCSB, and the assignments of error are overruled.
 {¶ 19} For these reasons, the judgments of the Common Pleas Court, Juvenile Division, of Allen County, Ohio, are affirmed.
Judgments affirmed.
 Bryant and Rogers, J.J., concur.