OPINION
{¶ 1} Appellant, Andrew Miller, appeals from a Monroe County Common Pleas Court, Juvenile Division judgment that terminated his parental rights and granted permanent custody of his son to appellee, the Monroe County Department of Job and Family Services.
 {¶ 2} Matthew Banks was born on November 13, 2005. Three days later, appellee filed a complaint alleging that Matthew was abused, neglected, and dependent. The complaint further alleged, among other things, that Matthew's mother, Anna Banks, had lost permanent custody of her three other children in Noble County and had consumed alcohol throughout her pregnancy. The trial court ordered that Matthew be placed in shelter care that day. He has been in foster care since then.
 {¶ 3} On November 21, 2005, appellee filed a motion to require Anna and appellant to submit to a DNA test to establish paternity, which the court granted. The paternity test established that appellant is Matthew's father. The court put an entry on to that effect on December 19, 2005.
 {¶ 4} Next, Anna filed a motion for visitation. Appellee filed an amended complaint and motion for permanent custody on January 9, 2006.
 {¶ 5} The court held a hearing on January 10, 2006, on Anna's motion for visitation. Appellant appeared at the hearing and orally requested visitation. The court found that Anna had not seen Matthew since November 16, 2005 and that appellant had never seen Matthew. The court ruled that since appellee had already filed a motion for permanent custody, visitation as a step towards reunification was not required. Therefore, it denied the motions for visitation.
 {¶ 6} Next, the court held an adjudication hearing. It heard testimony from several witnesses, including Matthew's guardian ad litem (GAL) and both parents. The court then granted permanent custody to appellee and divested both parents of their parental rights.
 {¶ 7} Both appellant and Anna filed separate, timely notices of appeal. However, the notice of appeal was the last filing this court received from Anna. She never filed a brief in this matter. Therefore, Anna's appeal in this matter is now dismissed for want of timely prosecution.
 {¶ 8} Appellant raises two assignments of error, the first of which states:
 {¶ 9} "THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO MONROE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} Appellant argues that the trial court's judgment was against the manifest weight of the evidence. He claims that the evidence did not support the court's finding that Matthew's best interest was served by granting permanent custody to appellee.
 {¶ 11} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, citing Stanley v. Illinois (1972), 405 U.S. 645, 651,92 S.Ct. 1208, 31 L.Ed.2d 551. However, this right is not absolute. In reSims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 12} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 13} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613. R.C. 2151.414(B)(1)(a) provides:
 {¶ 14} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 15} Pursuant to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 16} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 17} "* * *
 {¶ 18} "(4) Commit the child to the permanent custody of a public children services agency * * *, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child."
 {¶ 19} Thus, before it can grant permanent custody of a child to a children services agency, the court must evaluate the child's best interests using the factors set out in R.C. 2151.414(D) and determine whether the child cannot or should not be placed with either parent within a reasonable time using the factors set out in R.C. 2151.414(E).
 {¶ 20} In this case, the court relied on the factor set out in R.C. 2151.414(E)(11), which is, "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child." The evidence demonstrated that Anna had three other children permanently removed from her and her parental rights terminated. (State Ex. 1). The evidence also demonstrated that one of those children was appellant's son. (State Ex. 1). Appellant's parental rights were also terminated as to that child. (State Ex. 1). Appellant admitted to this involuntary termination of parental rights. (Tr. 200).
 {¶ 21} After making this finding, the court went on to determine whether it was in Matthew's best interest to grant permanent custody to appellee pursuant to R.C. 2151.414(D). R.C. 2151.414(D) provides that the court shall consider the following factors in determining a child's best interest:
 {¶ 22} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 23} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 24} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 25} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 26} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 27} The factors in R.C. 2151.414(E)(7) to (11) are:
 {¶ 28} "(7) The parent has been convicted of or pleaded guilty to * * * [certain offenses involving the child, the child's siblings, or another child who lived in the parent's household at the time of the offense.]
 {¶ 29} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 30} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 31} "(10) The parent has abandoned the child.
 {¶ 32} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 33} Here the court analyzed each of the best interest factors. It found that no contact occurred between Matthew and his parents and no evidence was offered as to Matthew's interaction with his foster parents. It noted that Matthew is too young to express his wishes. It found that appellee removed Matthew the day he came home from the hospital and he has been in appellee's custody since then. It also noted that, upon appellee's motion, it ordered that Matthew's parents were to have no contact with him.
 {¶ 34} The court further found that the sooner Matthew has a legal, secure, permanent placement, the more stability will be ingrained into his personality. It noted that the GAL, after much equivocation, recommended against permanent custody and for preparation of a case plan. The court then quoted a portion of the December 22, 20004 judgment entry from Noble County in which the Noble County Court divested appellant and Anna of their parental rights. The entry states in part:
 {¶ 35} "The Court notes that Andrew Miller and Anna Banks have shown the Court that no effort was made on their part to complete parenting classes which were desperately needed; that their complete indifferent attitude in light of the 13 month period of temporary placement was very evident, and that all reasonable efforts were made by the Department of Job and Family Services to prevent continued removal and to reunite the family."
 {¶ 36} The court stated that it needed to determine whether appellant and Anna had sufficiently changed in the 15 months since their previous child was permanently removed. As to appellant, the court found that he had recently completed three parenting classes. It also found that appellant and Anna had broken up and appellant was now involved with another woman. The court noted that appellant testified that he had not consumed alcohol for five weeks. However, the court stated that appellant's appearance in court was disheveled, he had bloodshot eyes, and appeared un-kept. Additionally, the court found that appellant had not worked since 2003 and had spent 30 days in jail on a probation violation. Finally, the court found that appellant lacked credibility because he told the court he would complete parenting classes the evening of the last day of trial, however, the letter he later submitted simply stated that appellant completed three classes and an assessment. Based on these findings, the court concluded that appellant had not changed his lifestyle since his termination of parental rights in Noble County.
 {¶ 37} As to the final best interest factor, the court found that, as previously noted, R.C. 2151.414(E)(11) applied to appellant because he previously had his parental rights involuntarily terminated.
 {¶ 38} Thus, the court concluded that it was in Matthew's best interest to grant his permanent custody to appellee.
 {¶ 39} We must examine the evidence to determine if it supports the court's decision.
 {¶ 40} Rhonda Covert, a social worker for appellee, testified that appellee became involved with Matthew when the hospital called to inform appellee that Anna had a baby, that she had three other children removed from her custody, and that she had drunk alcohol throughout her pregnancy. (Tr. 71). When asked again, Covert reiterated that the reason appellee took Matthew was due to Anna's drinking and the fact that she had three other children taken away. (Tr. 86). Covert also testified that appellee made no efforts from the time it removed Matthew to reunify him with appellant. (Tr. 72-73, 85).
 {¶ 41} Anna admitted that she drank and smoked throughout her pregnancy. (Tr. 152). She also testified about appellant. She stated that appellant did not give her any assistance during her pregnancy. (Tr. 149). She stated that appellant drank quite a bit and was not working during the time he lived with her. (Tr. 149). Anna further testified that appellant assaulted her during the time they lived together. However, she never sought medical attention or reported the assaults to law enforcement. (Tr. 160-61). Anna stated that she and appellant broke up because he cheated on her and would not stop drinking. (Tr. 161-62).
 {¶ 42} Appellant testified next. He admitted that he has had problems with alcohol. (Tr. 192-93). He stated that he received a DUI in 2002. (Tr. 193). Appellant testified that he never abused Anna. (Tr. 194). Appellant testified that he wants a chance to parent his son. (Tr. 196). He stated that he was currently taking parenting classes. (Tr. 196). He also stated that he was going to begin counseling for "alcohol and stuff" the next week. (Tr. 197). Both of these steps appellant undertook on his own. (Tr. 198). Appellant stated that he was currently living with his parents. (Tr. 198). Appellant additionally admitted to having a child removed from his care. (Tr. 200). Finally, appellant admitted that after he and Anna broke up, he did not provide support for her while she was pregnant. (Tr. 209).
 {¶ 43} Finally, William Moran, the GAL, testified. Prior to the hearing, he had submitted a report regarding Anna. In the report, he stated that Anna has an alcohol problem, needs parenting classes, and does not have sufficient income to care for a child. At that time, he had not spoken with appellant. (Tr. 239). He recommended that a case plan be implemented to address these issues and that Anna should have supervised visitation with Matthew. At the time he prepared the report, Moran had not seen the judgment entry from Noble County regarding the prior removal. (Tr. 225). However, he was aware that Anna and appellant had children removed from their care. (Tr. 238-39). Moran then testified that if Anna and appellant were already given the opportunity to work with a case plan in place, to address the alcohol problems, parenting classes, and employment issues, then his report was not relevant. (Tr. 230).
 {¶ 44} As to appellant, Moran stated that his concerns were that appellant had no job security and did not live on his own. (Tr. 229). Moran stated that, prior to seeing the Noble County judgment entry, his recommendation for appellant would have been for a case plan as he had recommended for Anna. (Tr. 239). Finally, Moran was asked what his current recommendation was as to appellant. Moran stated that a case plan should be developed to address the issues of alcohol, parenting, employment, and independent living. (Tr. 243-44). He stated that he could not, in good conscience, recommend permanent custody until the parents were given an opportunity to work on the problems that he cited. (Tr. 245).
 {¶ 45} Courts have stated that the permanent termination of parental rights is the, "family law equivalent of the death penalty in a criminal case." In re Hayes (1997), 79 Ohio St.3d 46, 48,679 N.E.2d 680, quoting In re Smith (1991), 77 Ohio App.3d 1, 16,601 N.E.2d 45. For that reason, parents "must be afforded every procedural and substantive protection the law allows." Id. Given the evidence presented, we cannot conclude that it supports the court's determination that permanent custody to appellee is in Matthew's best interest. The court clearly met the first statutory element in order to grant permanent custody — that Matthew could not or should not be placed with appellant within a reasonable amount of time due to the fact that appellant has previously had his parental rights involuntarily terminated. However, the court was also required to find by clear and convincing evidence that it was in Matthew's best interest to grant his permanent custody to appellee. Based on the evidence, the court did not meet this element.
 {¶ 46} No evidence was presented as to the first two statutory best interest factors. Matthew had no contact with his parents and no evidence was offered as to his interaction with his foster parents. And Matthew was too young to express his wishes.
 {¶ 47} The third statutory factor, Matthew's custodial history, is highly significant. Appellee removed Matthew from his mother right after his birth and placed him in foster care. The reason appellant was removed from Anna's care was due to her drinking during pregnancy and the fact that she had three other children removed from her care. It had nothing to do with appellant. It was not confirmed that appellant was Matthew's father until over a month later. Within a month of learning he was Matthew's father, appellant requested visitation with his son. The court refused this request stating that since appellee had already filed a motion for permanent custody, visitation was not required. Thus, appellant and Matthew were never given a chance to develop any type of custodial history together and appellant was denied any chance to parent his son.
 {¶ 48} As to the fourth factor, Matthew's need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to appellee, the GAL's testimony was relevant. The GAL opined that a case plan should be developed for appellant. He stated that he could not recommend permanent custody to appellee until the parents were given an opportunity to work on their problems. This testimony indicates that a legally secure placement could be possible without a grant of permanent custody to appellee.
 {¶ 49} The fifth factor is the only factor that weighs against appellant. Appellant previously had his parental rights involuntarily terminated as to another child.
 {¶ 50} The evidence demonstrates that appellant does not lead an ideal lifestyle. He drinks, he is unemployed, and he lives with his parents. However, the reason Matthew was removed from his home was due to Anna's drinking and the fact she had three children previously removed from her care. Appellant was never given a chance to have even one visitation with Matthew. And the GAL recommended against permanent custody and in favor of developing a case plan for appellant to work on along with supervised visitation. Thus, the court abused its discretion in terminating appellant's parental rights and granting permanent custody to appellee. Accordingly, appellant's first assignment of error has merit.
 {¶ 51} Appellant's second assignment of error states:
 {¶ 52} "OHIO REVISED CODE SECTION 2151.414(E)(11) IS A VIOLATION OF THE5TH AMENDMENT TO THE US CONSTITUTION."
 {¶ 53} R.C. 2151.414(E)(11) provides:
 {¶ 54} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 55} "* * *
 {¶ 56} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 57} Appellant argues that this section denied him due process, and is therefore unconstitutional.
 {¶ 58} Appellant did not raise this issue in the trial court. When a constitutional challenge is not raised in the trial court, it ordinarily will not be addressed for the first time on appeal. In re K., 8th Dist. No. 83410, 2004-Ohio4629, at ¶ 13, citing State v. Childs (1968),14 Ohio St.2d 56, 236 N.E.2d 545, paragraph three of the syllabus. "The 'failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" Id., quoting State v. Awan (1986), 22 Ohio St.3d 120,489 N.E.2d 277, syllabus.
 {¶ 59} Other courts have held that when an appellant fails to raise the issue of the constitutionality of R.C. 2151.414, the appellant has waived that issue on appeal. Id.; In re Andy-Jones, 10th Dist. Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312; In re Walker, 11th Dist. No. 2002 A 0087, 2003-Ohio-798. Because appellant failed to raise the question of R.C. 2151.414(E)(11)'s constitutionality in the trial court, his second assignment of error is now waived.
 {¶ 60} For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded for further proceedings pursuant to law and consistent with this opinion.
Vukovich, J., concurs.
Waite, J., concurs.